UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SEA STAR LINE, LLC,

      Plaintiff,                                    CASE NO.: 3:04-cv-202-J-25HTS

vs.

ACCESS TRANSPORTATION & LOGISTICS, INC.,

      Defendant.

_____/

## ORDER

This Cause is before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt.

20), Defendant's Motion for Partial Summary Judgment......(Dkt. 21), and Defendant's Motion

to Dismiss.....(Dkt. 36). Upon review of the motions, oppositions, and evidence filed in this case,

the Court finds as follows:

**Background**

Plaintiff Sea Star Line, LLC (Seastar) provides transportation of cargo. Its Complaint

seeks damages from Defendant Access Transportation and Logistics, Inc. (Access), a company

that arranges for cargo transportation. The Complaint seeks $107,487.63 plus "collection fees."[1]

Seastar's Complaint breaks down into three distinct damage claims, the first for $36,197.00, the

second for $67,375.63 and a third for "collection fees" which comprises fees for both the

$36,197.00 and $67,375.63 claims. Access has admitted it owes Seastar the $36,197.00 portion,

---

[1] According to Access, the correct amount being claimed is $103,607.63, the amount
listed in Seastar's Motion for Partial Summary Judgment.

1

which is a claim related to freight charges due. Access has asserted that its liability for the

collection fee involving this particular claim, if any, should not exceed $1,000.00. Access has

denied owing the $67,375.63 at issue, which was originally a debt owed by two other companies,

Anthem World Transport, Inc. and Anthem Express, Inc.(collectively, Anthem), as well as any

claim for collection fees related to this debt. Seastar claims the $67,375.63 based upon a

guarantee provision contained in Clause 14(a) of the Transportation Service Agreement between

Access and Seastar dated November 7, 2003 (Contract).[2]

The parties have both filed Motions for Partial Summary Judgment.  Access  has also

filed a Motion to Dismiss which argues that the Court should dismiss Plaintiff's claim of

$67,375.63 for want of subject matter jurisdiction.

**Motion to Dismiss**

Access submits that this Court lacks subject matter jurisdiction over the $67,375.63

claim as well as the collection fees claim related thereto because the Contract is a "mixed

contract," containing maritime and non-maritime elements and the non-maritime element

dominates. Specifically, the clause at issue reads as follows:

(a) To induce Carrier [Seastar] to enter into this Agreement, Shipper [Access]

assumes and guarantees all obligations of Anthem World Transport, Inc., and

Anthem Express, Inc., (jointly and severally "Anthem") under the Transportation

Services Agreement dated November 10, 2003, and all bills of lading related to

---

[2] Inexplicably, Seastar failed to attach this Contract to its Complaint.  Both parties cited
this document in their pleadings.  The document was eventually filed as an exhibit to a
deposition that was filed the same day as Defendant's Motion for Summary Judgment.  Access
filed and later refers to that deposition as "Seastar's deposition" rather than naming the actual
person deposed, Brenda Britt.

said Agreement. Such assumption and guarantee include but are not limited to full

and prompt payment of all sums due from Anthem pursuant to said Transportation

Services Agreement and bills of lading. All payments shall be in United States

currency and delivered to Carrier at its address specified below or to such other

person or at such other place as Carrier may designate in writing.

Clause 14(a) of the Transportation Service Agreement between Access and

Seastar dated November 7, 2003.

Access argues that Clause 14(a), the basis of Seastar's $67,375.63 claim, is not a

maritime element because it refers to an agreement to satisfy another entity's debts. *Kossick v.

United Fruit Co.*, 365 U.S. 731, 735 (1961)("agreement to pay damages for another's breach of a

maritime charter is not [within the Court's admiralty jurisdiction]") (internal citations omitted).

Further, according to Access, Clause 14(a) is more than an incidental element of the Contract; it

was *the* element that induced Seastar to enter into the Contract. Therefore, according to Access,

this Court lacks subject matter jurisdiction over the $67,375.63 claim as well as the collection

expense fee related to said claim.

Seastar disagrees, noting that in addition to guaranteeing Anthem's performance, Sea Star

independently entered into a maritime contract.  Seastar argues that the contract is primarily

admiralty in nature and asserts that the relevant inquiry is whether the contract references

maritime services; admiralty jurisdiction is denied only where the maritime components are

insubstantial. *Norfolk Southern Ry Co. v. James N. Kirby, Pty. Lt.*, 125 S. Ct. 390, 395 (2004).

While *Norfolk* is not entirely on point, this Court notes that the Supreme Court directs

lower courts to examine whether the primary purpose of the contract is to accomplish the

transportation of goods by sea. *Id.* at 394-95. This Court finds that the primary purpose of the

Contract is to affect maritime commerce and further finds that the nonmaritime aspects of the

Contract are more than incidental. Although nothing in the Clause 14 explicitly states that it is

related to admiralty, the clause was not executed in a vacuum. The promise was given as a part

of a larger admiralty transaction.[3] Thus, this Court has jurisdiction over this case and Access's

Motion to Dismiss is denied.

## Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reaching a summary judgment decision the court

must view the facts in the light most favorable to the non-moving party. *United of Omaha Life*

*Ins. Co. v. Sun Life Ins. Co. Of America*, 894 F.2d 1555, 1558 (11th Cir. 1990). However, in

order to avoid entry of summary judgment the non-moving party "may not rest upon the mere

allegations or denials" of his pleadings; instead, the non-moving party "must set forth specific

facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## Sea Star's Motion for Partial Summary Judgment

Seastar's Motion for Partial Summary Judgment argues that it is entitled to summary

judgment in the amount of $36,197 plus a collection fee expense of 35% or $12,668.95 pursuant

to its published tariff. Access does not deny that it owes Seastar the $36,197.00. However, it is

---

[3] Seastar also argues that this Court can exercise supplemental jurisdiction under 28
U.S.C. Section 1367.

not clear to the Court whether Access has paid this Seastar this amount and thus the parties are directed to inform the Court regarding this issue in writing within five days of this Order being entered.

Regarding the collection fee, Access contends that the contract entered into by the parties does not provide for this expense and notes the Contract terms supercede the tariff terms. Clause 9 of the parties' contract states that the contract controls "in the event of any conflict between this Agreement and the Tariff." Access further contends that the fee is excessive as it is unrelated to the actual or anticipated losses arising from the dispute. [4]

Seastar's motion as to the collection fee is denied. At the very least, there remains a genuine issue of material fact as to whether the claimed collection fee is recoverable.

**Access's Motion for Partial Summary Judgment**

Access disputes that it owes the $67,375.63 Anthem debt and accompanying collection fees. Clause 14(a) states that Access "assumes and guarantees all obligations of Anthem......

*under the Transportation Services Agreement dated November 10, 2003[5] and all bills of lading*

---

[4] Access further notes that it has admitted it owes this debt and no discovery has been required regarding it. It would be premature for the court to make any determination regarding this issue.

Access spends a great deal of time making arguments regarding the entitlement to attorneys fees which is neither at issue in Seastar's Motion nor ripe for consideration. For example, Access asserts that Florida Statutes 57.105 gives it a reciprocal right to attorneys fees if it prevails on a substantial portion of its defense and thus Seastar's fees must be offset by its own fees. Obviously, it would be premature for the Court to make any determination regarding this argument.

[5] Seastar evidently contends that this line should read "November 7, 2003," the date the Contract between the parties was signed. As argued by Access, however, this is a distinction without a difference because the Anthem debts at issue were incurred not only before November 10, 2003 but before November 7, 2003.

*related to said Agreement"* (emphasis added).   Evidently, there is no other contractual provision

that deals with either past or future Anthem debts. Thus, Access argues that it did not guarantee

the payment of Anthem's debts incurred prior to the date the Contract was signed, November 10,

2003.

Seastar presumably could argue[6] that there are three emails that establish Access's

_____

[6] Seastar's Memorandum of Law in Opposition to Access's Motion is a mere paragraph. Basically, instead of filing a well reasoned and complete opposition to Access's motion, Seastar added a Motion for Extension of Time to file a proper opposition to the end of the actual opposition pleading. The caption of the pleading does not even mention a Motion for Extension.

Even if Seastar filed a proper motion for extension it would have most certainly been denied. Seastar bases its extension request on its contention that it did not have a sufficient opportunity to depose some of Access's employees. A review of the docket in this case fails to support this representation.

The Case Management Order generated on June 28, 2004 listed a discovery cut off of December 1, 2004 and a dispositive motion deadline of January 3, 2005. On November 24, 2004, Seastar filed a motion to extend the discovery date to February 1, 2004 which the Court granted. Seastar's Motion stated that the discovery extension would not effect any other deadlines. Thus, Seastar represented to the Court that the changing of the discovery deadline would not effect its ability to file or respond to dispositive motions.

On January 10, 2005, SeaStar filed an unopposed Motion for Extension of Time to file a response to Access' motion which was also granted by the Court. Seastar was given until January 21, 2005 to file its opposition.

On January 18, 2004, Seastar filed a stipulation which stated the parties agreed to extend discovery until April 1, 2005. The stipulation did not mention the dispositive motion deadline.

On January 21, 2005, Seastar filed its one paragraph opposition to Access's dispositive motion which, as noted, included another extension request. The Court simply cannot understand why a party would request that discovery be extended *months* beyond the dispositive motion deadline, affirmatively state that the proposed extension would not effect any other deadlines, and then plead in its opposition to a dispositve motion that it did not have an opportunity to fashion a reasoned response because it did not depose certain individuals.

Further, the Court finds that even if the depositions at issue were obtained, they would not be helpful to Seastar because the Contract at issue is not ambiguous; deposition testimony

obligation to pay the Anthem debt.   Apparently, the emails were written by Access's employees. In sum, the emails arguably contain statements that Access will pay the Anthem debt in dispute even though Access was not obligated to.   However, these emails are not admissible.

 As Access argues, the November 3, 2003 email from Paul De La Cruz to Ed Pretre is inadmissable parole evidence because it was generated before the Contract was signed. According to Access, the emails sent after the Contract was signed are also inadmissable.

Access argues that the January 20, 2004 email from Anthony Emposimato to Bob Leetch cannot amend the Contract because it was not executed as required by Clause 17 of the Contract and also because there was no consideration for the promise.  Clause 17 of the Contract states, "[n]o verbal or written agreement.....affects the terms of this Agreement.....No...modification of this Agreement shall be established..[except] by an instrument in writing duly executed by [the parties]."  This Court agrees that the email did not comply with Clause 17 of the Contract and also notes that consideration must be exchanged and bargained for in admiralty cases.  *Gulf Towing Co. v. Steam Tanker, Amoco New York*, 648 F.2d 242, 245 (5th Cir. 1981).  There is no evidence that consideration was exchanged for the "promise." Further, there is no evidence that Mr. Leetch had authority to bind Access.

---

regarding the Contract's interpretation would not be considered by the Court.  However, out of an abundance of caution, the Court will briefly discuss the written emails that Seastar could have attempted to proffer to support its argument that the Contract language does not control the sole issue discussed in Access's motion.

This Court also notes that on May 12, 2005, Seastar inexplicably filed a pleading captioned "Notice of Filing Conflict in Middle District of Florida" which actually refers to a pleading filed in another Court regarding a *scheduling* conflict.  Counsel should be aware that the Court expects pleadings to be properly titled in the future.

Similarly, the February 18, 2004 email from Lezlie Miicke to Brenda Britt also was unsigned, there was no consideration given for the promise, and there is no evidence that Ms. Miicke had authority to bind Access.

Further, Access points out that the emails in question, although they contain what appears to be promises to pay the Anthem debt, also state that Access took the position that it was not obligated to do so. Thus, Access argues that even if the Contract was ambiguous and the email evidence deemed admissible, which it is not, the email statements are subject to two different legal interpretations and thus the statements should be construed against the drafter of the Contract, Seastar.

Seastar has filed a response to Access's Motion to Summary Judgment that argues that the second sentence of Clause 14(a) demonstrates that Access was liable for Anthem's prior debts. This issue is not addressed in Access's Motion.

Clause 14(a) sentence two reads: "Such assumption and guarantee include but are not limited to full and prompt payment of all sums due from Anthem pursuant to said Transportation Services Agreement and bills of lading." Seastar urges this Court to construe this language as a requirement that Access pay debts Anthem incurred *prior* to the Contract execution. However, this Court finds that both sentences in Clause 14(a) logically refer to *post-contract* Anthem debts.

As noted, the first sentence of Clause 14(a) on its face refers to obligations under the Transportation Services Agreement dated November 10, 2003 and all bills of lading related to said agreement. The second sentence simply states the assumption of Anthem's debts is "*not limited to full and prompt payment* of all sums due from Anthem pursuant to said Transportation Services Agreement." Because this sentence again, on its face, limits Access's responsibility to

8

Anthem debts under the November 10, 2003 agreement, the "not limited to" language cannot logically refer to pre-contract debts. [7]

Thus, there is no genuine issue of material fact as to whether Access was liable to pay Anthem debts arising pre-contract. This Court disagrees with Seastar's proposed reading of Clause 14(a) and agrees that the emails at issue are not admissible to interpret the Contract. While the Court may be sympathetic to Seastar's claim of payment, it simply cannot rewrite the parties' unambiguous contract. As a matter of law, Access is not liable for either the $67,375.63 at issue or the collection fees claimed by Plaintiff for this debt. Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. 20) is **denied** as to the collection fees. The parties are directed to inform the Court in writing within **five days** of this Order being entered whether Access has paid Seastar the $36,197 debt at issue.

2. Defendant's Motion for Partial Summary Judgment..... (Dkt. 21) is **GRANTED**.

3. Defendant's Motion to Dismiss...... (Dkt. 36) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of August 2005.

HENRY LEE ADAMS, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record

---

[7] As noted, Seastar claims that Clause 14(a) should have referred to the November 7, 2003 agreement. Access states that the Anthem debt at issue existed before November 7, 2003 and thus the three day difference in the dates is irrelevant.